UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>       Plaintiff,<br><br>   v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>       Defendant. | No. C12-00315 RSM<br><br>ORDER DENYING SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's Motion for Summary Judgment. Dkt. # 51, Ex. 1. The Court finds this matter appropriate for resolution on the briefing. Having considered Defendant's motion and supporting documentation and the opposition thereto, as well as the remainder of the record, and for the reasons stated herein, the Court denies summary judgment.

**Factual Background**

Plaintiff United States Department of Labor ("DOL") filed the instant lawsuit on February 24, 2012, seeking injunctive and other relief for alleged discrimination by Defendant United States Postal Service ("USPS") against its employee Arthur Williams, in violation of § 11(c) of the Occupational Safety and Health Act of 1970 ("the Act"), 29 U.S.C. § 651 *et seq*. *See* Dkt. # 31 (hereinafter,

**ORDER DENYING SUMMARY JUDGMENT** - 1

"Compl."), ¶ 6; Dkt. # 58, Ex. 1.  Mr. Williams was hired by USPS on July 10, 1995. Compl. at ¶ VIII. He thereafter received several promotions, including in October 2006 to Safety Specialist at grade 17 on the Executive and Administrative Pay Schedule ("EAS"), at which point his work station was changed from the Queen Anne District Office to the Seattle Processing & Distribution Center ("Seattle P&DC"). Dkt. # 58 ("Williams Decl."), ¶ 23. Mr. Williams thereafter served as the occupational safety and health technical advisor for the Seattle P&DC and three other facilities, where, among his duties, he conducted regular safety inspections, investigated accidents, and ensured compliance with health and safety rules. *Id.* at ¶ 24; Compl. at ¶ VIII. Mr. Williams' annual performance review of November 2, 2007 indicated that he met expectations in two of four core categories, received a "high contributor" ranking in one category, and received an "exceptional contributor" ranking in "managing accident reduction plans." Dkt. # 58, Ex. 4.

On February 20, 2008, Naseem Banani, a temporary, non-union employee at the Seattle P&DC, went to Williams' office with two union representatives and informed Williams that she was experiencing health complications from her work on a machine and that her supervisor had threatened to fire her if she was unable to continue her work. See Dkt. # 57, Ex. 7, pp. 23-25.  Williams assisted Banani by informing her of her rights and providing her a telephone number to contact OSHA. *See id.* at p. 27; Williams Decl., ¶ 33. That same day, Mr. Williams emailed two of his supervisors to inform them his interaction with Banani, wherein he wrote that "OSHA will be reviewing the results to determine if we have a health issue." *Id.* at ¶ 34 & Ex. 5.[1]

Williams alleges that he was subject to a number of retaliatory events and practices subsequent to assisting Banani with her OSHA report, which have caused him to experience stress, anxiety, and depression. On February 26, 2008, the same day that OSHA informed USPS of Banani's complaint,

---

[1] Plaintiff asserts that Williams engaged in additional protected activities when he accompanied an OSHA inspection of the P&DC on March 19, 2008 and filed complaints of retaliation against Defendant with OSHA. *See* Dkt. # 58, ¶¶ 46, 59, 65, 89, 95.

**ORDER DENYING SUMMARY JUDGMENT** - 2

USPS transferred Mr. Williams to USPS's Queen Anne District Office. Williams testifies that the transfer occurred precipitously, without process and without opportunity for him to collect his manuals and personal belongings from the Seattle P&DC. Dkt. # 57, Ex. 13, pp. 19-20, 46. Williams was placed at a secretarial desk "in the middle of the floor," a placement that allegedly "humiliated" him, before being moved to a small and "isolated" office, which a former USPS Labor Relations Manager described as a "very cold" and "damp" storage area. *Id.* at Ex. 13, pp. 24-25; *id.* at Ex. 11, pp. 178-79. Although Williams officially maintained his EAS 17 ranking, he reports that his duties were reduced to "menial tasks," such as filing reports prepared by other safety specialists and cleaning his office. *Id.* at Ex. 13, pp. 22-23; Williams Decl., ¶ 57.

Also on February 26, 2008, Senior Plant Manager Don Jacobus informed Williams by email that he was "displeased" with aspects of his work and that Williams' "continuing and obvious interest in representing the bargaining unit will not be tolerated." Dkt. # 57 at Ex. 9, p. 19. The email directed Williams to refrain from "ANY professional dialogue with the bargaining unit with exception of [Williams'] domiciled safety advocates and team meetings or projects." *Id.* On February 27, 2008, Manger of Distribution Operations ("MDO") Carlos Salazar sent an email to MDO Pamela Cook informing her that Don Jacobus "does not want [Williams] to have anything to do with [the OSHA complaint.]" Dkt. # 57, Ex. 5, p. 27. A month later, USPS manager Kelly Johnson extended restrictions on Williams' communications to bar him from engaging in conversations with craft employees and to prohibit him from walking on the workroom floor unless instructed to do so by a supervisor. Williams Decl. at Ex. 8; Dkt. # 57, Ex. 1, p. 60 (email from Johnson sent March 20, 2008, reminding Williams that he is not permitted "to be out on the workroom floor").

Beginning on March 5, 2008, Johnson conducted the first of four investigative interviews with Williams, which Johnson contends were motivated by three complaints by Jacobus about Williams' on-the-job performance: berating of a forklift driver for driving too fast, maintaining a messy office,

**ORDER DENYING SUMMARY JUDGMENT** - 3

and failing to timely complete reports. *See* Dkt. # 57, Ex. 1, p. 83. Williams, who characterized Johnson's demeanor during the interviews as antagonistic and disrespectful, alleges that the interviews were motivated instead by and focused principally on his assistance to Banani. *See* Williams Decl. at ¶¶ 42, 49, 54, 75. Following the third interview on April 11, 2008, Williams went on Family Medical Leave Act ("FMLA") leave due to stress, headaches, and difficulty sleeping and began receiving treatment for psychosis and depression. *See id.* at ¶¶ 55-56; Dkt. # 57, Ex. 13, p. 36. Williams contends that Johnson subsequently changed his leave status from FMLA to annual/sick leave despite receiving notes from Williams' physician indicating that he was being treated for a serious medical condition. Williams Decl. at ¶¶ 61-65.

When Williams attempted to return to work on July 28, 2008 with clearance from his physician to work under different supervision, Johnson informed Williams that he had "not been cleared to work" and ordered him to return home. *Id.* at ¶ 68; Dkt. # 57, Ex. 1, p. 158. Later that day, Johnson sent Williams a letter notifying him that he would be placed on enforced leave as a result of his medical condition. *Id.* at p. 72. Upon his return to work on September 15, 2008 with full clearance from his physician, Williams was again placed at a secretary's desk and Johnson publicly announced the reassignment of Williams' responsibility of the P&DC to an EAS 16 employee. Williams Decl., ¶ 72. On October 3, 2008, Johnson issued Williams a formal Letter of Warning, accusing him of failing to follow USPS policies, including his duty of "loyalty" to Defendant. Williams Decl. at Ex. 13. Williams' 2008 annual performance evaluation reflected this displeasure; Johnson ranked him as a "noncontributor" on oral communication and described him as uncooperative and unforthcoming. *Id.* at Ex. 4, p. 22.

Williams contends that Defendant continued to retaliate against him on account of his protected activities by refusing to consider him for an EAS 20 Manager of Safety position, for which Williams applied in October 2009. One of the three members of the applicant review committee,

**ORDER DENYING SUMMARY JUDGMENT** - 4

Charles Kosmicki, testified that the selection officer, Helen Pelton, explicitly informed Kosmicki that she did not want Williams' name put forward for an interview, mentioning his "prior EEO activity and Whistleblower complaint as reasons." Dkt. # 57, Ex. 11, p. 50. Kosmicki asked to be removed from the committee as a result of the interaction, which he regarded as improper, though Pelton did not allow him to withdraw. *See id.* Kosmicki ultimately determined that Williams was not minimally qualified for the position. He later testified that he "sure want[ed] to believe that [he] would be immune to being influenced." Dkt. # 43, Ex. 1, p. 188. Despite these events, in January 2010, Williams applied for and was promoted to an FMLA Coordination EAS 18 position, which resulted in a slight pay raise. *See* Dkt. # 52, Ex. 2, p. 41. Williams remained in this position until it was transferred to Greensboro, North Carolina in April 2011. *See id.* at Ex. 1, p. 76.

On April 18, 2008, Williams filed a formal complaint with OSHA alleging that Defendant had retaliated against him in response to his assistance to Banani, subjecting him to harassment, intimidation, and a hostile work environment in violation of Section 11(c) of the Act. *See* Dkt. # 44, Ex. 1; Williams Decl., ¶ 59. On April 21, 2008, OSHA assigned an investigator to the complaint and sent USPS a formal letter, notifying it that the investigation could result in litigation. Dkt. # 44, ¶¶ 3-4, Ex. 1. Williams made three subsequent complaints regarding the same treatment, and OSHA's investigation of the matter continued until January 12, 2012. *Id.* at ¶ 5. Shortly thereafter, the DOL filed the instant lawsuit pursuant to its statutory authority to prosecute whistleblower claims. *See* 29 U.S.C. § 660(c)(2). The Department of Labor has since moved the Court to sanction USPS for its alleged spoliation of documents relevant to this litigation (Dkt. # 42), which the Court addresses in an accompanying Order on spoliation. Through the instant Motion for Summary Judgment, Defendant seeks dismissal of all claims in Plaintiff's operative complaint (Dkt. # 31).

### **Summary Judgment Standard**

**ORDER DENYING SUMMARY JUDGMENT** - 5

A motion for summary judgment requires the court to determine whether the movant is entitled to judgment as a matter of law on identified claims or defenses based on the evidence thus far presented. Fed. R. Cv. P. 56(a). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those that may affect the outcome of the suit under governing law. *Id.* at 248. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In ruling on a motion for summary judgment, the court is not empowered to make credibility determinations or weigh the evidence, but may only determine whether there is a genuine issue of fact for trial. *Crane v. Conoco*, 41 F.3d 547, 549 (9th Cir. 1994); *Anderson*, 477 U.S. at 255. However, conclusory allegations and speculative or unsubstantiated testimony are insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 345 (9th Cir. 1995). Further, "the inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "In evaluating motions for summary judgment in the context of employment discrimination, [the Ninth Circuit] has emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004); *see also Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994).

## Analysis

Plaintiff's complaint asserts a single cause of action, on which Defendant now moves for summary judgment: that USPS discriminated against Mr. Williams in retaliation for his protected

**ORDER DENYING SUMMARY JUDGMENT** - 6

activities, thereby violating OSHA's whistleblower protection provision, § 11(c) of the Act, 29 U.S.C. § 660(c)(1). Defendant contends that Plaintiff has failed to meet its burden to show that USPS took any adverse employment action against Williams on account of his engagement in protected activity. Defendant further contends that Plaintiff's alternative theory – that USPS discriminated against Williams by creating a hostile work environment – is not available under § 11(c) and not supported by the evidence.

The announced purpose of the Act is to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). Section 11(c) furthers this goal by safeguarding employees against adverse actions taken on account of their engagement or suspected engagement in protected activity, thereby ensuring that violations of the Act are reported. *See Reich v. Hoy*, 32 F.3d 361, 368 (8th Cir. 1994). Section 11(c)(1) prohibits any employer from "discharg[ing] or in any manner discriminat[ing] against any employee because such employee has filed a complaint or instituted or caused to be instituted any proceeding under or related to this chapter…or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter." 29 U.S.C. § 660(c)(1). Section 11(c)(2) further authorizes the Secretary of Labor to bring an action in federal district court upon the filing and investigation of a complaint by an "employee who believes that he has been discharged or otherwise discriminated against" in violation of the Act. In analyzing a claim under § 11(c), courts analogize to other employment discrimination statutes, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq. See, e.g., Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir. 1993); *Chao v. Norse Dairy Systems*, 2007 WL 2838958, * 9 (S.D. Ohio 2007).

In analyzing a retaliation claim under § 11(c), courts have adopted a three-stage burden-shifting framework for analysis as applied to discrimination cases in general. *See, e.g., Schweiss*, 987 F.2d at 549; *Solis v. Consolidated Gun Ranges*, 2011 WL 1215028, *7 (W.D. Wash. 2011). Plaintiff

**ORDER DENYING SUMMARY JUDGMENT** - 7

first bears the burden to establish its *prima facie* case by showing: (1) participation in a protected activity, (2) a subsequent adverse action by the employer, and (3) a causal connection between the protected activity and the subsequent adverse action. *Reich v. Hoy Shoe Co., Inc.*, 32 F.3d 361, 365 (8th Cir. 1994); *Solis*, 2001 WL 1215028 at *7. At the summary judgment stage, "the degree of proof necessary to establish a prima facie case is minimal and does not even need to rise to the level of preponderance of the evidence." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005). Second, once the plaintiff makes out its *prima facie* case, the burden shifts to the employer to articulate an appropriate non-discriminatory reason for its action. *Id.* Finally, if the employer carries this burden, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual. *Id.*; *see also McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004) (applying burden-shifting approach to retaliation claim under Title VII); *Manatt v. Bank of America, NA*, 339 F.3d 792, 800 (9th Cir. 2003) (same).

### 1. Prima Facie Case of Retaliation

Defendant does not dispute that Williams engaged in protected activity by assisting Naseem Banani in filing an OSHA complaint to report health and safety concerns on February 20, 2008, and further by accompanying an OSHA inspection of the P&DC on March 19, 2008 and filing complaints of retaliation against OSHA. *See* Dkt. # 51-1, p. 17. Rather, Defendant contends that USPS has failed to establish the second and third prongs of its *prima facie* case. The Court disagrees.

### a) Adverse Actions

In order to meet its burden of showing an adverse employment action, the Department of Labor "must show that a reasonable employee would have found the challenged action materially adverse," which means that the action "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.D.C. 2006). (2006); *see also*

**ORDER DENYING SUMMARY JUDGMENT** - 8

*Thompson v. North American Stainless, LP*, 131 S. Ct. 863 (2011) (applying *Burlington Northern* standard). The requirement to show "*material* adversity" weans out "petty slights, minor annoyances, and simple lack of good manners" that do not rise to a level that will deter a victim of discrimination from lodging a report. *Burlington Northern*, 548 U.S. at 68. In adopting the "reasonable employee" standard, the Supreme Court further emphasized that alleged harms are to be judged by an objective standard that takes into account the particular circumstances under which they occur. *Id.* To be materially adverse, an action need not rise to the level of an ultimate employee action, such as discharge. *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000). Rather, actions such as a lateral transfer, an unfavorable job reference, or a change in work schedule may be sufficiently severe under the circumstances to deter a reasonable employee from complaining about discrimination. *Id.*; *see also Burlington Northern*, 548 U.S. at 69.

    Plaintiff asserts a number of discrete adverse actions, principally: Williams' transfer and reassignment to lower-level duties, restrictions on his communications, placement in a cold and isolated storage space, an unwarranted negative performance review, and refusal to consider him for a job promotion. The Court has little difficulty in finding that Plaintiff has presented evidence that is sufficient, when viewed in the light most favorable to Plaintiff as the non-moving party, to raise a genuine issue of fact for trial as to whether several of these actions could have dissuaded a reasonable employee in Williams' circumstances from lodging a discrimination complaint. Prior to his protected activity, Williams possessed substantial discretionary responsibility for ensuring compliance with health and safety rules in four USPS facilities, including through investigating accidents and filing reports. Williams' transfer to the Queen Anne District Office substantially altered the nature of his employment, curtailing his job responsibilities to the point where he could do little more than clean his desk and file already prepared reports and placing him in a cold, damp corner of the new facility. His managers further imposed restrictions on Williams' communications and job functions that were regarded as unusual and even unprecedented. S*ee, e.g.*, Dkt. # 57, Ex. 4, pp. 69-70, 67-77; *id.* at Ex. 7,

**ORDER DENYING SUMMARY JUDGMENT** - 9

p. 43. Under the circumstances, the Court finds that a rational factfinder could permissibly infer that a reasonable person would be deterred from reporting discrimination if doing so would result in a transfer that substantially curtailed his discretion, stunted his duties, and placed him in a foreboding corner of an unfamiliar facility. *See Kessler v. Westchester County Dept. of Social Services*, 461 F.3d 199, 209-20 (2d Cir. 2006) (finding transfer to constitute materially adverse harm under similar circumstances). A trier of fact could also find Williams' undeserved negative performance review and the refusal to consider him for a promotion, if proven, to constitute cognizable adverse employment actions. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986).

Defendant's argument that none of these activities rose above the level of "petty slights or minor annoyances" is both unconvincing and misstates the Supreme Court's standard for material adversity. *See* Dkt. # 51-1, citing *Burlington Northern*, 548 U.S. at 68. Though Williams' official job title and pay were unaffected by his transfer, the Supreme Court has squarely held that a material adverse action need not alter the "terms and conditions of employment" or carry tangible economic loss. *See Burlington Northern*, 548 U.S. at 70. Rather, a work reassignment without formal demotion can constitute a cognizable harm sufficient to deter reporting where, as here, it is attended by loss of prestige and newly subjects the employee to undesirable job duties. *Id.* at 70.

b) **Causal Connection**

In order to establish the third prong of its *prima facie* case, DOL must present, through circumstantial evidence or otherwise, "some evidence of a causal connection between the protected activity" and the subsequent adverse actions. *Reich*, 32 F.3d at 367. Per the Act's implementing regulations, "the employee's engagement in protected activity need not be the sole consideration behind discharge or other adverse action." Rather, a plaintiff can meet its burden by showing that the "protected activity was a substantial reason for the action, or [that] the discharge or other adverse action would not have taken place 'but for' engagement in protected activity." 29 C.F.R. § 1977.6(b);

*see Consolidated Gun*, 2011 WL 1215028 at *7. Here, Plaintiff has met its burden by providing some evidence of causal connection, and Defendant has so conceded on reply. *See* Dkt. # 61, p. 3 n. 1. The temporal proximity between Williams' assistance to Banani and his transfer only five days later, and on the very same day that USPS received notification by OSHA of a complaint, provides circumstantial evidence of retaliatory motive. *See Dawson v. Entek Intern.*, 630 F.3d 928, 937 (9th Cir. 2011) ("[T]emporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext."); *cf. McGinest*, 360 F.3d 1103 (declining to find causation where adverse action occurred one and a half years after the protected activity and plaintiff relied solely on timing). The Court also finds unconvincing Defendant's contention that Plaintiff lacks evidence of causation with respect to USPS's decision to pass Williams over for a promotion, where this action occurred approximately nine months after Williams' assistance to Banani. Defendant overlooks Williams' subsequent protected activities, including his filing of OSHA complaints on April 18, 2008 and July 7, 2008, which triggered investigations that were ongoing at the time Williams applied for the managerial role. *See* Williams Decl. at ¶ 59. *See also Singletary v. District of* Columbia, 351 F.3d 519, 526 (D.C.Cir. 2003). Whether this temporal proximity, combined with other evidence discussed *infra*, is sufficient to establish a causal link is a question properly resolved at trial. Accordingly, the Court finds that Plaintiff has sufficiently made out its *prima facie* case in order to survive summary judgment.

   2. **Pretext**

   Ordinarily, once the plaintiff makes out its prima facie case, the burden shifts to the defendant to offer an alternative explanation for its actions. Defendant in its briefing fails to offer any alternative explanation for the majority of the alleged adverse actions, limiting its arguments to contesting Plaintiff's ability to make out its *prima facie* case. *See* Dkt. # 61, p. 5 (arguing that "none of the allegedly material adverse actions (through the October 2009 non-selection) could stand on their own for purposes of establishing a *prima facie* case of retaliation"). The Court has already found that

**ORDER DENYING SUMMARY JUDGMENT** - 11

Plaintiff has adduced sufficient evidence to raise material issues of fact for trial as to retaliation based on Williams' transfer, de facto demotion, and other materially adverse actions. As Defendant has failed to offer an alternative explanation for these actions, Defendant has failed to carry its burden to show that summary judgment is warranted on these grounds. As to Williams' non-selection in 2009 for the EAS 20 safety manager position, Defendant offers the alternative explanation that Williams was unqualified for the role. Defendant asserts that "[a]t least one member of the Selection Committee (Kosmicki) adjudged Williams as not qualified for the position because Williams lacked managerial/supervisory experience." Dkt. # 51-1, p. 23. The Court, however, finds that Plaintiff has adduced sufficient evidence that, if credited, could support the conclusion that this proffered explanation is pretextual.

There are two ways in which a plaintiff may demonstrate pretext: "(1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112-13 (9th Cir. 2011); *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006); *McGinest*, 360 F.3d at 1123; *Desert Place, Inc. v. Costa*, 539 U.S. 90 (2003) (suggesting that a plaintiff may rely on either circumstantial or direct evidence of discriminatory motive to prove her case under Title VII). "Direct evidence of animus…creates a triable issue" as to an employer's motive in taking adverse actions, "even if the evidence is not substantial." *Dominguez-Curry*, 424 F.3d at 1038; *see also Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d at 1128 (9th Cir. 2000) ("The plaintiff is required to produce 'very little' direct evidence of the employer's discriminatory intent to move past summary judgment.") (citing *Godwin*, 150 F.3d at 1221). Direct evidence is that which "proves the fact of [discriminatory animus] without inference or presumption." *Id.* The Ninth Circuit has "repeatedly held that a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer." *Id.* at 1039.

The DOL has met its burden to show pretext for the purposes of summary judgment by introducing direct evidence that raises a triable issue as to whether discriminatory animus motivated USPS's decision to pass Williams over for a promotion. A trier of fact could find Helen Pelton's comment to Kosmicki that she did not want William's name put forward for an interview because of his "Whistleblower complaint," Dkt. # 57 at Ex. 11, p. 50, to be clear and unambiguous evidence of her retaliatory motive. Viewed in a light favorable to Plaintiff, Pelton's comment directly shows, without need for inference, that she possessed animus against Williams because of his protected activities and further that this animus motivated her to ensure that Williams would not receive fair and equal consideration for the safety manager position, despite his qualifications. Further, a trier of fact could find that other emails from Williams' managers disparaging his OSHA activities and even reprimanding him for his "continuing and obvious interest in representing the bargaining unit," *see* Dkt. # 57 at Ex. 9, p. 19, provide additional direct evidence of retaliatory motive behind Williams' transfer and *de facto* demotion. This evidence of discriminatory intent is alone sufficient to preclude summary judgment.[2]

### 3. Hostile Work Environment

Plaintiff rests its § 11(c) retaliation claim on an additional theory, asserting that the various discrete alleged adverse employment actions taken by USPS, when combined, subjected Williams to a hostile work environment, amounting to a materially adverse action taken on account of Williams' protected activities. As an initial matter, Defendant contends that a hostile work environment claim is not cognizable under the Act's anti-retaliation provision. Defendant further contends that even if § 11(c) supports a hostile work environment retaliation claim, DOL's evidence is insufficient to raise a

---

[2] As a result, the Court need not reach consideration of circumstantial evidence that Plaintiff adduces, including temporal proximity and deviation from normal institutional practices to Williams' detriment. *See Dawson*, 630 F.3d at 937; *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011).

**ORDER DENYING SUMMARY JUDGMENT** - 13

triable issue of material fact as to whether Williams' work environment was actionably severe or pervasive. *See* Dkt. # 51-1, p. 19. The Court considers both of these objections in turn.

Defendant correctly asserts that neither the Ninth Circuit, nor any other circuit that the Court has been able to identify, has expressly found a hostile work environmental claim to be cognizable under § 11(c). The Ninth Circuit has, however, found that imposition of a hostile work environment can amount to retaliation under Title VII. *See Ray*, 217 F.3d at 1245. Other circuits are in accord. *See, e.g.*, *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (holding that "co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation *prima facie* case"); *Drake v. Minnesota Mining & Mfg. Co.* 134 F.3d 878, 886 (7th Cir. 1998) ("[R]etaliation can take the form of a hostile work environment"); *Gunnel v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998); *Hussain v. Nicholson*, 435 F. 3d 359, 366 (D.C. Cir. 2006) ("In this circuit, a hostile work environmental can amount to retaliation under Title VII."). Plaintiff correctly notes that Section 11(c) is "broadly construed by the courts" in order to protect complaining employees and to advance the salutary objectives of the Act. *Marshall v. Whirlpool Corp.* ¸593 F.2d 715, 722 (6th Cir. 1979), affirmed, 445 U.S. 1, 63. Further, the Court takes notice that anti-discrimination precepts developed in the Title VII context are frequently imported into § 11(c) analyses. Defendant has identified no reason that the Court should refrain from analogizing to Title VII in this instance, which similarly prescribes "adverse treatment that is based on retaliatory motive and is reasonable likely to deter the charging party or others from engaging in the protected activity." *Ray*, 217 F.3d at 1245, citing EEOC Compliance Manual ¶ 8008. With respect to both statutes, severe and pervasive harassment in retaliation for protected activity would seem to be paradigmatic of adverse treatment that the whistleblower provisions were designed to guard against. *Id.*

Nonetheless, the Court is not prepared, on the basis of the parties' relatively scant briefing on this issue, to squarely determine this issue of first impression at this stage of the proceedings. In

**ORDER DENYING SUMMARY JUDGMENT** - 14

importing status-based hostile work environment claims in the ADA context, the Tenth Circuit in *Lanham v. Johnson County, Kansas*, 393 F.3d 1151, 1155-56 (10th Cir. 2004) drew on an extensive discussion of the similarities between the purposes and remedial structures of the statutes, which it found to be indicative of Congress' intent to treat the ADA no less expansively than Title VII. *See also*, *Morgan v. Napolitano*, 2013 WL 6782845, *11 (E.D. Cal. 2013). Here, the parties have failed to engage in statutory interpretations or to identify other indications of congressional intent to bolster this Court's decision one way or the other. Further, the parties have declined to address the way in which a hostile work environment claim would square with the burden-shifting framework employed in the § 11(c) context. For instance, if Plaintiff establishes a hostile work environment sufficient to make out the second prong of its *prima facie* case, would the burden then shift to Defendant to produce an alternative explanation as to this environment as a whole or with respect to each component action individually? Would direct evidence of discriminatory intent with respect to any component action suffice to show pretext for the whole? As the parties have declined to engage in robust analyses of these issues, the Court defers its determination on the availability of a hostile work environment retaliation claim under § 11(c) and directs the parties to further brief this question, should it remain a subject of dispute, in a motion in limine prior to trial. The Court finds that this legal question may be appropriately resolved at that stage. As Plaintiff asserts hostile work environment based on the cumulative effects of allegedly retaliatory discrete acts, this question goes not to the evidence to be put on at trial but rather to the way that the evidence will be argued to the fact-finder.

To the extent that a hostile work environment claim is cognizable under § 11(c), the Court has little trouble locating material issues of fact that require the existence of a hostile work environment to be ascertained at trial. Discrete acts that plaintiff claims are independently actionable as adverse employment actions can simultaneously constitute a hostile work environment so long as they are adequately connected to each other as part of the same unlawful employment practice and together meet the hostile work environment standard. *Baird v. Gotbaum*, 662 F.3d 1246, 1252-53 (D.C.Cir.

**ORDER DENYING SUMMARY JUDGMENT** - 15

2011). To constitute an actionable hostile work environment, harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Ray*, 217 F.3d at 1245; *see also McGinest*, 360 F.3d at 1113. The plaintiff must show that the work environment was both subjectively and objectively hostile. *Id.* That is, the plaintiff must show that the employee perceived his work environment to be hostile and that a reasonable person in his position would also perceive it to be so. *Dominguez-Curry*, 424 F.3d at 1034. In considering whether the alleged conduct rises to the level of creating an objectively hostile work environment, the court "assess[es] all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotations omitted). It is sufficient to create actionable harassment that the "hostile conduct pollutes the victim's workplace, makes it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *McGinest*, 360 F.3d at 1113.

The DOL has put forward sufficient evidence to show that a trier of fact could find Defendant's conduct toward Williams following his protected activity both subjectively and objectively hostile. Williams clearly considered it to be so, taking FMLA leave due to extreme stress and anxiety, seeking psychiatric treatment, lodging multiple OSHA complaints in response to continuing instances of perceived harassment, and describing USPS's activities as amounting to a "campaign to punish me." Williams Decl. at ¶ 100. DOL has produced evidence of a string of incidents of harassment, closely connected in time and by the identity of their perpetrators, including: William's precipitous transfer, his placement in an embarrassing and uncomfortable work location, his isolation from other team members, restrictions on his communications, unusual and significant curtailments of his work responsibilities, public berating of his competency, questioning of his loyalty, multiple antagonistic interviews, and his placement on forced leave. From an objective point of view, a reasonable person could find that USPS's actions together were both sufficiently severe and

**ORDER DENYING SUMMARY JUDGMENT** - 16

pervasive so as to pollute Williams' work place, change the conditions of his employment, render it more difficult for him to perform and take pride in his work, and dampen his desire to stay in his position. Accordingly, the Court denies summary judgment on Plaintiff's hostile work environment retaliation claim and directs the parties to further brief its availability as discussed herein.

## Conclusion

For the reasons discussed herein, the Court hereby ORDERS that Defendant's Motion for Summary Judgment (Dkt. # 51) is DENIED. The Court further directs the parties to include briefing with their motions in limine of no more than ten (10) pages as to whether a hostile work environment constitutes an adverse employment action for the purpose of a retaliation claim under § 11(c) of the Act and to what extent the burden-shifting framework is affected where Plaintiff relies on a hostile work environment theory.

DATED this 12 day of August 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE